IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


GLENN A. HEATH,

                    Plaintiff,

          v.                          CASE NO.  11-3142-SAC

STATE OF KANSAS,
et al.,

                    Defendants.

MEMORANDUM AND ORDER

     This matter was filed as a civil rights complaint pursuant to 42 U.S.C. § 1983 by an inmate of the Lansing Correctional Facility, Lansing, Kansas.  The named defendants are the State of Kansas, the Kansas Prisoner Review Board, and the following persons described as members of the Kansas Parole Board (KPB): Mike O'Neil,[1] Patricia Biggs, and Robert Sanders.  Mr. Heath challenges the KPB's decision to deny and defer his application for parole.

     Plaintiff has filed an Amended Complaint, which he may do so as of right.  However, statements in his Amended Complaint indicate his lack of understanding that an amended complaint completely supercedes the original complaint.  Thus, he may not simply refer back to the original complaint, and the two are not automatically merged.  Instead, all defendants he sues, all claims and arguments he asserts, and all factual allegations he makes must be included in the Amended Complaint itself.  The court could simply ignore the original complaint since it has been superceded.  Instead, plaintiff is given the opportunity to file a "Second Amended Complaint" that

---

     [1]     The court notes that Mike O'Neal has not been a member of the KPB.

contains all defendants, claims, and allegations that plaintiff intends to have considered in this case.

However, before filing a Second Amended Complaint, Mr. Heath must consider that his allegations appear to be in the nature of habeas corpus claims.  Unless he can allege sufficient facts in a Second Amended Complaint to present a plausible claim for relief under 42 U.S.C. § 1983, this action will be construed by the court as one challenging the execution of his sentence under 28 U.S.C. § 2241.

## INITIAL PARTIAL FILING FEE ASSESSED

Mr. Heath has neither paid the appropriate filing fee nor submitted a proper and complete motion for leave to proceed in forma pauperis (IFP).  He merely requests leave to proceed IFP at the end of his complaint.  He has submitted the requisite inmate account statement (Doc. 2).  The court tentatively considers his request for IFP status based upon the information presently before it.  However, plaintiff is required to submit a completed IFP motion upon court provided forms, which call for a list of his assets and other information as well as his affidavit.

Plaintiff is reminded that under 28 U.S.C. § 1915(b)(1), being granted leave to proceed IFP does not relieve him of the obligation to pay the filing fee for a civil complaint.[2]  Instead, it merely entitles him to proceed without prepayment of the full fee, and to pay that fee over time through payments automatically deducted from his inmate trust fund account as authorized by 28 U.S.C. §

---

[2]     The fee for filing a civil rights complaint is $350.00.  The filing fee for filing a § 2241 habeas corpus petition is $5.00.

1915(b)(2).[3]   Furthermore,  § 1915(b)(1), requires the court to assess an initial partial filing fee of twenty percent of the greater of the average monthly deposits or average monthly balance in the prisoner's account for the six months immediately preceding the date of filing of a civil action.  Having examined the records of plaintiff's account, the court finds the average monthly deposit to plaintiff's account over the relevant period is $72.79, and the average monthly balance is $48.21.  The court therefore will be required to assess an initial partial filing fee of $14.50, twenty percent of the average monthly deposit, rounded to the lower half dollar if this matter continues as a civil rights action.  Plaintiff must submit this initial partial filing fee at the same time he submits his Second Amended Complaint for filing.[4]  His failure to submit the initial fee in the time allotted will result in dismissal of this action without further notice.

**COMPLAINT NOT ON FORMS**

Local court rules require that both a civil complaint and a habeas corpus petition be submitted upon court approved forms.  See D. Kan. Rule 9. 1(a)(Petitions for writs of habeas corpus . . . and civil rights complaints by prisoners . . . shall be on forms . . . .").  Mr. Heath is required in this action to either submit a complete Second Amended Complaint or a § 2241 petition, and whichever he submits must be upon court provided forms.  If he fails

---

[3]     Pursuant to §1915(b)(2), the Finance Office of the facility where plaintiff is confined will be directed to collect twenty percent (20%) of the prior month's income each time the amount in plaintiff's inmate account exceeds ten dollars ($10.00) until the filing fee has been paid in full.

[4]     On the other hand, if Mr. Heath amends this action to a § 2241 habeas petition, the filing fee of $5.00 is all that must be satisfied.

to comply with this Order by filing a Second Amended Complaint or a § 2241 petition and a fully completed IFP motion on forms, this action may be dismissed without prejudice and without further notice.

## FACTUAL ALLEGATIONS

Mr. Heath has alleged the following factual background for his complaint. He was convicted in 1996 of felony murder and child abuse, and was sentenced to consecutive terms of life imprisonment and 68 months. In 1998, the Kansas Supreme Court affirmed Mr. Heath's conviction for first-degree murder but reversed his conviction for abuse of a child and vacated his sentence for that offense, holding it was multiplicious.

In October 2010 petitioner became eligible for parole pursuant to Kan.Stat.Ann. (hereinafter KSA) § 22-3717. In April 2011 the KPB denied his application for parole. Plaintiff attaches to his complaint a copy of the KPB's Notice of Action (NOA) dated April 4, 2011. This NOA provided in pertinent part:

> After considering all statutory factors, the decision of the Kansas Parole Board is: pass to October 2015. Pass reasons: serious nature/circumstances of crime; violent nature of crime. objections. Extended pass reasons: Inmate has been sentenced for a class A or B felony, or an off grid felony, and the Board makes a special finding that a subsequent parole hearing should be deferred for five (5) years, because it is not reasonable to expect that parole would be granted at a hearing if held before then for the following reasons: the amount of time served is insufficient based on the severity of the crime and will devalue the victim; the inmate's crime resulted in multiple victims and caused lasting impact on those victims; the inmate has not demonstrated behavioral insights necessary to decrease his risk to re-offend; the inmate's conduct during the commission of the crime manifested in excessive brutality of the victim; the victim was particularly vulnerable due to his age and relationship to the inmate.

Complaint/Memorandum (Doc. 1), Attach. 2.  Plaintiff also attaches his resume, post-release objectives, and letters of recommendation, which he presumably presented to the KPB.  He alleges that his institutional record was exemplary, that he earned positive staff comments, and that his "LSIR score" was 10.

## SUMMARY OF CLAIMS

Plaintiff challenges the decision on his parole application on a variety of theories.  In his original complaint, he generally claims that defendants' denial of parole was an abuse of the parole process.  His more specific claims are that defendants (1) denied his "reasonable expectation of a liberty interest in release on parole"; (2) "breached the contractual liberty of KSA § 75-5210a;" (3) "maliciously prosecuted (him) for a charge reversed and vacated," which has resulted in his false imprisonment; (4) violated his right to privacy, placed him "in a false light before the public," and acted in excess of their authority by relying upon many "inaccuracies and untruths;" (5) violated the Fifth Amendment "by creating a state agency that functions as a hybrid" court; and (6) denied him equal protection of the law.  In this complaint, plaintiff seeks compensatory and punitive damages, a declaratory judgment that the acts and omissions of the defendants have violated his federal constitutional rights, and a preliminary and permanent injunction.

In his Amended Complaint, plaintiff claims that (7) he contracted with a member of the KPB, and the KPB breached its fiduciary duty.  He also claims that (8) the KPB denied due process by relying upon "secretive" objections to his parole; (9) the KPB

selectively enforced KSA § 22-3717; (10) the 1998 amendment to § 22-3717 either created a liberty interest or was a "Bill of Pains and Penalties;" (11) Kansas statutes created a liberty interest in rehabilitation and mandated his prompt return to the community and entitlement to parole; (12) his rights to liberty and rehabilitation were denied; (13) the KPB acted with a malicious intent to injure him; and (14) he was re-prosecuted and punished without trial.  He seeks the same types of relief in his Amended Complaint, but requests nominal damages as well.


**REQUEST FOR PRELIMINARY INJUNCTION**

In his original complaint, plaintiff requests a preliminary injunction.  However, he does not even specify what action he is asking the court to enjoin.  In any event, a party seeking a preliminary injunction "must demonstrate four factors:" (1) a substantial likelihood of success on the merits; (2) irreparable harm to the movant if the injunction is denied; (3) the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest. Schrier v. University of Co., 427 F.3d 1253, 1258 (10th Cir. 2005); RoDa Drilling Co. v. Siegal, 552 F.3d 1203, 1208 (10th Cir. 2009)(citing Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008)).  The Tenth Circuit has made it clear that "because a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." Beltronics USA, Inc. v. Midwest Inventory Distribution, LLC, 562 F.3d 1067, 1070 (10th Cir. 2009)(quoting Greater Yellowstone Coalition v. Flowers, 321 F.3d 1250, 1256 (10th

Cir. 2003))(internal quotation marks omitted).

Mr. Heath alleges no facts and makes no arguments whatsoever that would support a request for a preliminary injunction. This request is therefore denied due to plaintiff's failure to satisfy his burden of establishing those factors which are prerequisites to the granting of preliminary injunctive relief.

## REQUEST FOR CLASS ACTION ORDER

In his original complaint, plaintiff requests a "class action order" citing Rule 23 of the Federal Rules of Civil Procedure. In support of this request, he merely states "that the factual claims set forth herin (sic)" are supported by various inmates who are "willing to give evidence of said claims." Plaintiff has not filed a proper motion for class certification. Nor has he alleged facts showing that the prerequisites for class certification in subsections (a) and (b) of Rule 23 are satisfied. Accordingly, the court denies this request.

## SCREENING

Because Mr. Heath is a prisoner seeking relief from a government official, the court is required by statute to screen his complaint and to dismiss the complaint or any portion thereof that is frivolous, fails to state a claim upon which relief may be granted, or seeks relief from a defendant immune from such relief. 28 U.S.C. § 1915A(a) and (b).[5] Having screened all materials filed, the court finds the original and the first amended complaints are

---

[5]     Section 2241 petitions are also screened.

subject to being dismissed.  Plaintiff is given the opportunity to cure the following defects when he files either his Second Amended Complaint or a § 2241 habeas petition upon court approved forms.  If he fails to cure the described deficiencies within the allotted time, this action may be dismissed without further notice.

## CLAIMS FOR MONEY DAMAGES

The State of Kansas and its agencies have absolute immunity under the Eleventh Amendment and may not be sued in federal court for money damages.  See Will v. Michigan Dep't of State Police, 491 U.S. 58, 66 (1989); Meade v. Grubbs, 841 F.2d 1512, 1525-26 (10th Cir. 1988);  Ramirez v. Oklahoma Dep't of Mental Health, 41 F.3d 584, 588 (10th Cir. 1994)("It is well established that absent an unmistakable waiver by the state of its Eleventh Amendment immunity, or an unmistakable abrogation of such immunity by Congress, the amendment provides absolute immunity from suit in federal courts for states and their agencies."), overrruled on other grounds by Ellis v. University of Kansas Medical Center, 163 F.3d 1186 (10th Cir. 1998).  The Eleventh Amendment likewise bars claims for damages against entities that are arms or instrumentalities of a State. Giese v. Scafe, 133 Fed.Appx. 567, 569 (10th Cir. 2005)(unpublished)[6](citing Sturdevant v. Paulsen, 218 F.3d 1160, 1164 (10th Cir. 2000)).  "A parole board is an instrumentality of a state." Id. (citing McGrew v. Tex. Bd. of Pardons & Parole, 47 F.3d 158, 161 (5th Cir.1995)).  Parole board members are immune to suit for money damages "for actions taken in performance of the [b]oard's

---

[6]     Unpublished opinions cited herein are not cited as binding precedent but for persuasive reasoning.  See Fed.R.App.P. 32.1 and 10th Cir.R. 32.1.

official duties regarding the granting or denying of parole." <u>Russ v. Uppah</u>, 972 F.2d 300, 303 (10th Cir. 1992); <u>Knoll v. Webster</u>, 838 F.2d 450, 451 (10th Cir. 1988).   Mr. Heath presents no facts or argument demonstrating that the parole board members who decided his case were acting other than within the scope of their official duties at all relevant times.   <u>Giese</u>, 133 Fed.Appx. At 569-70.   It follows that money damages are simply not available against any of the defendants named in the complaints under the alleged circumstances.   28 U.S.C. § 1915(e)(2)(B)(iii) requires a district court to dismiss a case if it finds the plaintiff is seeking monetary relief against a defendant "who is immune from such relief."   <u>See</u> <u>also</u> 28 U.S.C. § 1915A(b).

Even without regard to immunity, this action is subject to being dismissed under <u>Heck v. Humphrey</u>, 512 U.S. 477, 486-87 (1994) and its progeny.   To the extent a judgment for plaintiff in this action would render the KPB's decision in his parole case invalid, his damages claims are premature and barred by the principles announced by the U.S. Supreme Court in <u>Heck</u>.   <u>See</u> <u>Reed v. McKune</u>, 298 F.3d 946, 953 (10th Cir. 2002).   The Tenth Circuit explained in <u>Reed</u>:

> In <u>Heck v. Humphrey</u>, the Supreme Court held that in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.   <u>Heck v. Humphrey</u>, 512 U.S. 477, 486-87 (1994) (footnote omitted).   Because a judgment in favor of (plaintiff) would "necessarily imply the invalidity" of the decision on his state parole application, <u>id.</u> at 487, and because (he) has not "demonstrate[d] that the (parole decision) has already

been invalidated," id., his claim for money damages is
likewise not cognizable under § 1983.

Reed, 298 F.3d at 953-54 (citing see also Edwards v. Balisock, 520
U.S. 641, 648 (1997)(holding that Heck is applicable to § 1983 suits
premised on alleged violations of prison disciplinary procedures));
Jacobs v. Cushinberry, 44 Fed.Appx. 889, 890-91 (10th Cir.
2002)(unpublished)("The defects challenged by (petitioner)
necessarily imply the invalidity of the parole decision;
consequently, before he may obtain monetary damages stemming from
that decision, (he) must demonstrate that the decision has
previously been invalidated.")(citing see Edwards, 520 U.S. at 646,
648)); see Crow v. Penry, 102 F.3d 1086, 1087 (10th Cir.
1996)("[Heck] applies to proceedings that call into question the
fact or duration of parole or probation.")(citation omitted);
Schafer v. Moore, 46 F.3d 43, 44-45 (8th Cir. 1995)(Heck applies to
§ 1983 actions challenging denial of parole). Mr. Heath alleges no
facts demonstrating that the decision on his parole application has
already been invalidated. It follows that his damages claims are
not cognizable under § 1983, and are subject to being dismissed upon
screening. The Heck bar applies to claims for declaratory relief as
well. See Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005)("a state
prisoner's § 1983 action is barred (absent prior invalidation)-no
matter the relief sought (damages or equitable relief), no matter
the target of the prisoner's suit . . . if success in that action
would necessarily demonstrate the invalidity of confinement or its
duration"); Edwards, 520 U.S. at 648.

Since plaintiff is clearly not entitled to the monetary and
declaratory relief that he seeks at this time, his claim for

injunctive relief is all that remains. This request is subject to being dismissed as completely conclusory. As previously noted, Mr. Heath does not identify any prospective injunctive relief that he is asking the court to order, and his allegations suggest none that would be beyond the scope of a habeas corpus petition.[7] See Richards v. Bellmon, 941 F.2d 1015, 1019 (10th Cir. 1991). The court finds that plaintiff does not adequately identify any relief he seeks beyond money damages. The court directs plaintiff to specify what relief he is seeking other than money damages that is not cognizable in a habeas corpus action. If plaintiff is seeking injunctive relief to obtain release on parole or an earlier consideration for release, then his remedy is by way of a petition for writ of habeas corpus, and not a civil rights complaint.

## HABEAS NATURE OF CLAIMS

Despite plaintiff having filled his prolix complaints with numerous and varied legal theories, the few factual allegations in his pleadings suggest that what he ultimately seeks is to overturn the parole decision in his individual case.[8] He asserts that he is

---

[7]     In addition, the Governor issued Executive Reorganization Order No. 34, which abolished the KPB with its members appointed by the Governor, and established a three-member Prisoner Review Board whose members are appointed by the Secretary of Corrections. This change was effective July 1, 2011. It is therefore not clear that plaintiff has named a proper defendant for purposes of injunctive relief.

[8]     Mr. Heath apparently believes there is some advantage to bringing his claims under § 1983 rather than § 2241. Generally, the prerequisites to filing under § 2241 include full and proper exhaustion of administrative and state judicial remedies, and a § 2241 petition may be dismissed upon screening by the court, or sua sponte, if exhaustion has not been shown. While a civil rights complaint may not be dismissed sua sponte for failure to exhaust, exhaustion is nonetheless a statutory prerequisite to its filing as well. 42 U.S.C. § 1997e(a)("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). The plaintiff's failure to exhaust is likely to be raised in a civil action by defendants as an affirmative defense

being illegally confined as a result of the denial of parole.  The
actual nature of Mr. Heath's claims is analyzed according to the
Tenth Circuit's reasoning in Reed, 298 F.3d at 953:

> The Supreme Court has held that "when a state prisoner is
> challenging the very fact or duration of his physical
> imprisonment, and the relief he seeks is a determination
> that he is entitled to immediate release or a speedier
> release from that imprisonment, his sole federal remedy is
> a writ of habeas corpus." Preiser v. Rodriguez, 411 U.S.
> 475, 500, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973).  This
> requirement is applicable to a challenge to a
> constitutional defect in an individual parole hearing
> where the remedy lies in providing a new parole hearing.
> Herrera v. Harkins, 949 F.2d 1096, 1097 (10th Cir. 1991).
> We therefore conclude that, with respect to Reed's request
> for an injunction that would effect his immediate or
> imminent release on parole, his claim is not cognizable
> under § 1983 and must instead be brought under 28 U.S.C.
> § 2241.

Id.  The court repeats for emphasis that to the extent plaintiff is
challenging the fact or duration of his confinement, his claims are
not cognizable under § 1983.[9]  A "prisoner cannot use § 1983 to
obtain relief where success would necessarily demonstrate the
invalidity of confinement or its duration." Wilkinson, 544 U.S. at
78 (citing Heck, 512 at 477).  Instead, a challenge to the denial
of parole is an attack upon the execution of the inmate's sentence
that must be litigated in a habeas corpus petition filed pursuant
28 U.S.C. § 2241.  Preiser v. Rodriquez, 411 U.S. 475, 489 (1973);

---

once an answer is required.  Thus, the person who insists upon using a civil
rights complaint to seek relief from an unfavorable parole decision may merely
postpone the dismissal of his federal case for having come to court without having
first fully exhausted all remedies available in the state. He may eventually also
suffer the consequence of his claims being barred by procedural default of
administrative or state remedies.

[9]     Section 1983 is the appropriate remedy only to the extent that the
plaintiff is actually seeking the benefit of a ruling on a constitutional issue
that may affect future parole hearings, i.e., "injunctive or declaratory relief
to correct constitutionally defective parole procedures." Herrera v. Harkins, 949
F.2d 1096, 1097-98 (10th Cir. 1991).  Success on a prisoner's civil-rights claim
regarding parole will mean "at most new eligibility review, which at most will
speed consideration of a new parole application." Wilkinson, 544 U.S. at 82.

<u>Hamm v. Saffle</u>, 300 F.3d 1213, 1216 (10th Cir. 2002); <u>U.S. v. Furman</u>, 112 F.3d 435, 438 (10th Cir. 1997), <u>cert.</u> <u>denied</u>, 513 U.S. 1050 (1994); <u>Johnson v. Kansas Parole Bd.</u>, 419 Fed.Appx. 867, 869 (10th Cir. 2011)(unpublished)(citing <u>Henderson v. Scott</u>, 260 F.3d 1213, 1214 (10th Cir. 2001), <u>cert.</u> <u>denied</u>, 535 U.S. 1063 (2002)); <u>Ellibee v. Feliciano</u>, 374 Fed.Appx. 789, 791 (10th Cir. 2010)(unpublished)("[A] § 2241 habeas petition is appropriate where a prisoner seeks 'either immediate release from prison or the shortening of confinement'."); <u>Reed</u>, 298 F.3d at 953 (citing <u>Preiser</u>, 411 U.S. at 500)(State prison inmate who sought injunctive relief to compel parole board officials to release him on parole had to proceed via habeas corpus petition rather than § 1983.); <u>see</u> <u>also</u> <u>Powell v. Ray</u>, 301 F.3d 1200, 1201 (10th Cir. 2002), <u>cert.</u> <u>denied</u>, 538 U.S. 927 (2003). Plaintiff is directed to show cause why this action should not be treated as a habeas corpus petition under § 2241. If he fails to show cause within the time allotted, this action will be so construed.

**FAILURE TO SHOW EXHAUSTION OF STATE REMEDIES**

It is well-settled that before filing a habeas corpus petition in federal court, an inmate must have exhausted all the available state remedies. <u>Johnson</u>, 419 Fed.Appx. at 869-70 (citing <u>see</u> <u>Coleman v. Thompson</u>, 501 U.S. 722, 730-31 (1991)); 28 U.S.C. § 2254; <u>Montez v. McKinna</u>, 208 F.3d 862, 866 (10th Cir. 2000)(a habeas petitioner is generally required to exhaust state remedies whether his action is brought under 28 U.S.C. § 2241 or § 2254.). Plaintiff makes no showing that he has exhausted either available administrative appeal remedies or the remedies available in the

Kansas courts.  "Generally, when a petitioner has failed to exhaust his state court remedies, the federal habeas petition should be dismissed to allow the petitioner to return to state court to pursue those remedies." <u>Johnson</u>, 419 Fed.Appx. at 870 (citing <u>see</u> <u>Demarest</u> <u>v. Price</u>, 130 F.3d 922, 939 (10th Cir. 1997)).  Mr. Heath must show that he fully exhausted all remedies available in the state prior to filing this action in federal court.  If he fails to show full exhaustion within the time allotted, this action may be dismissed.

**ALLEGATIONS FAIL TO STATE A FEDERAL CONSTITUTIONAL CLAIM**

Even if plaintiff were entitled to federal court review of his challenges to the KPB's decision on his application for parole, this court would find that his allegations state no claim for relief. Whether plaintiff presents facts that will allow him to proceed under § 1983 or amends this action to one properly brought only under § 2241, he must state facts that evince the violation of a federal constitutional right.  "To state a claim under section 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  <u>West v. Atkins</u>, 487 U.S. 42, 48-49 (1988)(citations omitted); <u>Northington v. Jackson</u>, 973 F.2d 1518, 1523 (10th Cir. 1992).  Similarly, to state a valid claim under 28 U.S.C. § 2241, a petitioner must show that he "is in custody in violation of the Constitution or laws or treaties of the United States . . . ."  The court has considered plaintiff's factual allegations and finds that, whether viewed in the context of a § 1983 civil rights complaint or a § 2241 habeas corpus petition, they fail to state a federal

constitutional claim.

One of plaintiff's main constitutional arguments is that relevant Kansas statutes create a liberty interest in parole and as a result he has a legitimate claim of entitlement to parole. Any claim for relief that flows from this argument has no legal merit. The United States Supreme Court has plainly held that there "is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1, 7 (1978); Ohio Adult Parole Auth. v. Woodard, 523 U.S. 272, 280 (1998); Ellibee, 374 Fed.Appx. at 91 (citing see Malek v. Haun, 26 F.3d 1013, 1015 (10th Cir. 1994)). "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies." Straley v. Utah Bd. of Pardons, 582 F.3d 1208, 1212 (10th Cir. 2009), cert. denied, 130 S.Ct. 1737, 176 L.Ed.2d 213 (2010). "[A] federal liberty interest in parole only arises when a prisoner has a legitimate claim of entitlement to it." Id. (citing Malek, 26 F.3d at 1015-16)("Not only is there no constitutional or inherent right to receive parole prior to the expiration of a valid sentence, but, absent state standards for the granting of parole, decisions of a parole board do not automatically invoke due process protections."); see also Board of Pardons v. Allen, 482 U.S. 369, 379 n. 10 (1987)("[S]tatutes or regulations that provide that a parole board 'may' release an inmate on parole do not give rise to a protected liberty interest."). However, the Kansas Supreme Court held years ago, and the Tenth Circuit Court of Appeals agreed, that the Kansas parole statutes do not create a

liberty interest in early release.  <u>Gilmore v. Kan. Parole Bd.</u>, 243
Kan. 173, 756 P.2d 410, 415 (Kan.), <u>cert.</u> <u>denied</u>, 488 U.S. 930
(1988)("K.S.A.1987 Supp. 22-3717 does not create a liberty interest
in parole.")); <u>Malek</u>, 26 F.3d at 1015.

Plaintiff argues that <u>Gilmore</u> "is no longer applicable" because
there the KSC reviewed the 1987 version of KSA § 22-3717, while §
22-3717 was amended in 1988 to "specifically include[ ] K.S.A. § 75-
5210a," and that the provisions as amended created a liberty
interest.  The language of amended § 3717(g)[10] still does not contain
mandatory language and instead expressly provides that "the Kansas
parole board may release on parole those persons confined in
institutions who are eligible for parole . . . ."  The language of
§ 75-5210a[11] does not limit the discretion of the Kansas parole board

---

[10]     KSA § 22-3717(g) currently provides in pertinent part:

(g) Subject to the provisions of this section, the Kansas parole
board may release on parole those persons confined in institutions
who are eligible for parole when: (1) . . . ; or (2) the secretary of
corrections has reported to the board in writing that the inmate has
satisfactorily completed the programs required by any agreement
entered under K.S.A. 75-5210a, and amendments thereto, or any
revision of such agreement, and the board believes that the inmate is
able and willing to fulfill the obligations of a law abiding citizen
and is of the opinion that there is reasonable probability that the
inmate can be released without detriment to the community or to the
inmate. Parole shall not be granted as an award of clemency and shall
not be considered a reduction of sentence or a pardon.

<u>Id.</u>

[11]     K.S.A. § 75-5210a currently provides:

75-5210a.  Programs designed to prepare inmate for release on parole
supervision; agreements between secretary and inmate; completion of
program reported to parole board; inmate eligible for parole prior to
completion of program; agreement entered into inmate's record

(a) Within a reasonable time after a defendant is committed to the
custody of the secretary of corrections, for service of a sentence
for an indeterminate or off grid crime, the secretary shall enter
into a written agreement with the inmate specifying those
educational, vocational, mental health or other programs which the
secretary determines the inmate must satisfactorily complete in order
to be prepared for release on parole supervision.  To the extent
practicable, the agreement shall require the inmate to have made
progress towards or to have successfully completed the equivalent of

in any manner.[12]   It merely requires the Secretary of Corrections
(SOC) to enter into an agreement with each inmate as to inmate
programs, and report to the board once the inmate has satisfactorily
completed the programs required by the agreement.   Moreover, courts
have held, subsequent to the 1988 amendment, that the Kansas
statutes created no liberty interest in parole.   See e.g., Jeffries
v. Roberts, 164 P.3d 850, 2007 WL 2377303, * 1 (Kan.App. Aug. 17,
2007)(Table); Ellibee, 374 Fed.Appx. at 791-92; Trumbly, 8 Fed.Appx.
at 859-60 (citing Gilmore, 243 Kan. at 180); Suarez v. Utah Bd. of
Pardons & Parole, 76 Fed.Appx. 230 (10th Cir. 2003); Jeffries v.
Roberts, 354 Fed.Appx. 355, **1 (10th Cir. Dec. 1,
2009)(unpublished); Crump v. Kansas, 143 F.Supp.2d 1256, 1261-62

---

a secondary education before release on parole if the inmate has not
previously completed such educational equivalent and is capable of
doing so.   The agreement shall be conditioned on the inmate's
satisfactory conduct, employment and attitude while incarcerated.   If
the secretary determines that the inmate's conduct, employment,
attitude or needs require modifications or additions to those
programs which are set forth in the agreement, the secretary shall
revise the requirements.   The secretary shall agree that, when the
inmate satisfactorily completes the programs required by the
agreement, or any revision thereof, the secretary shall report that
fact in writing to the Kansas parole board.   If the inmate becomes
eligible for parole before satisfactorily completing such programs,
the secretary shall report in writing to the Kansas parole board the
programs which are not completed.

Id.

[12]   Plaintiff also cites KSA § 22-3717(h) and (i).   Subsection (h) governs
the times for parole hearings and requisite notices, and sets forth a list of
factors that the board "shall consider" at each parole hearing, which includes
"all pertinent information regarding such inmate."   Id.   As the Tenth Circuit has
clearly reasoned:

[t]he requirement that the paroling authority shall consider all
pertinent information does not equate to the "shall release . . .
when" requirement of Allen or the "shall order . . . release unless"
language of Greenholtz.

Trumbly v. Kansas Parole Bd., 8 Fed.Appx. 857, 859 (10th Cir.
2001)(unpublished)(citing see Greenholtz, 442 U.S. at 11).

Subsection (i) provides that the parole board will review the inmate's
proposed release plan, and may impose any condition deemed necessary.   Neither of
these subsections contains any mandatory language that could be construed as
giving rise to a legitimate expectation in release on parole.

(D.Kan. 2001).  In fact, the KCA, after again citing <u>Gilmore</u> and its holdings that "the Kansas parole statute does not give rise to a liberty interest," concluded in a much more recent unpublished opinion:

> Although some of the provisions under K.S.A.2005 Supp. 22-3717 have changed from those under K.S.A.1987 Supp. 22-3717, K.S.A.2005 Supp. 22-3717(g) and (h) still gives the KPB discretion to grant or deny parole.  K.S.A.2005 Supp. 22-3717 sets certain timelines when an inmate is eligible for parole.  Nevertheless, K.S.A.2005 Supp. 22-3717 does not establish an inmate's right to the grant of parole.

<u>Gilkey v. Kansas Parole Bd.</u>, 147 P.3d 1096, *4 (Kan.App. 2006)(unpublished), <u>review denied</u>, (Kan. 2007).  "Parole itself is a matter of grace and amounts to a privilege rather than a right." <u>Trumbly v. Roberts</u>, 248 P.3d 784, *2 (Kan.App. 2011)(unpublished) (citing <u>Gilmore</u>, 243 Kan. at 180).  Thus, contrary to Mr. Heath's argument, under the Kansas parole statutes even as amended, the parole decision remained discretionary.

Plaintiff's claim that he had a legitimate expectation of release on parole under KSA § 75-5210a is without merit because this statutory provision contains no mandatory language that restricts the parole authority's discretion in any way or creates a presumption of release.  Plaintiff also argues that the KPB breached his program agreement by failing to parole him even though he had successfully completed the agreement.  This argument has been rejected by the Kansas appellate courts and the Tenth Circuit.[13]  <u>See</u>

---

[13]    This claim was also previously rejected by this court in <u>Jones v. Feliciano</u>, 2009 WL 3473404, *2-*5 (D. Kan. Oct. 7, 2009)(unpublished):

> "[T]he statute establishing the program agreement program, Kan.Stat.Ann. § 75-5210a, does not confer a liberty interest in parole." <u>Trumbly</u> at 859.  Nor does K.S.A. § 22-3717 create such a liberty interest.  <u>See id.</u> (K.S.A. 22-3717, which directed the board to consider all pertinent information did not create liberty interest

Payne v. KPB, 20 Kan.App.2d 301, 305, 887 P.2d 147 (Kan. App. 1994)(citing KSA § 75-5210(a)); Trumbly, 8 Fed.Appx. at 857 ("Nothing in the agreement mandates an inmate's release upon successful completion of programs;" and "the statute establishing the program agreement program, Kan.Stat.Ann. § 75-5210a, does not confer a liberty interest in parole."). The KCA reasoned that the Kansas parole board had sole authority to grant or deny parole, and that the Secretary of Corrections (SOC) had no authority to promise that an inmate, who enters into a program agreement, will be granted parole. Payne, 20 Kan.App.2d at 306 (citing § 75-5210(a)). Moreover, since the SOC, not the Kansas parole board, enters into and monitors the program agreements, there can be no claim that the board breached the program agreement. Id. Heath does not provide a copy of his program agreement. However, these agreements generally do not contain a promise that the inmate will be granted parole upon completion of the program agreement. See id. at 305-07. Nor do they provide that the parole board is required to grant parole upon successful completion of a program agreement. Id. As the Tenth Circuit reasoned:

> "[T]he Kansas statute merely empowers the Board to place one on parole when the Board, in the exercise of its discretion, believes that the interests of the prisoner and the community will be served by such action." (Citing Gilmore 756 P.2d at 414). And, . . . the Kansas Supreme Court's interpretation of its own statutes is binding on this court "absent some conflict with federal law or overriding federal interest." Sac & Fox Nation v. Pierce, 213 F.3d 566, 577 (10th Cir. 2000).

---

in parole)(citing Gilmore, 756 P.2d at 415); Gilkey, 147 P.3d at 1096. Parole under Kansas law is a privilege, granted as a matter of grace by the KPB, not as a matter of fundamental right. Gilmore, 756 P.2d at 415.

Id.

<u>Trumbly</u>, at 859.

Because parole in Kansas remains discretionary, Mr. Heath cannot invoke the procedural guarantees of the Due Process Clause. <u>Elibee</u>, 374 Fed.Appx. at 791-92 (citing <u>see</u> <u>Olim v. Wakinekona</u>, 461 U.S. 238, 250-51 (1983)); <u>See</u> <u>Malek</u>, 26 F.3d at 1016; <u>Jones v. Hannigan</u>, 1 Fed.Appx. 856, 859 (10th Cir. Jan. 9, 2001)(unpublished) ("[U]nless there is a liberty interest in parole, the procedures followed in making the parole determination are not required to comport with standards of fundamental fairness.")(quoting <u>O'Kelley v. Snow</u>, 53 F.3d 319, 321 (11th Cir. 1995)); <u>Shirley v. Chestnut</u>, 603 F.2d 805, 807 (10th Cir. 1979)).  It follows that, even if Mr. Heath's complaint could be construed as alleging that he was denied certain procedural rights during his state parole proceedings, he states no federal constitutional claim.  The Tenth Circuit reasoned that, "[a]s the Kansas Court of Appeals noted, '[t]here being no liberty interest in parole, it cannot be argued that the denial of parole, whenever it is done or under whatever statute involved, disadvantages a prisoner'."  <u>Trumbly</u>, at 859.  Accordingly, plaintiff's allegations of being denied federal due process present no cognizable claim for relief.  <u>Greenholtz</u>, 442 U.S. at 7; <u>Crump</u>, 143 F.Supp.2d at 1262.

Plaintiff claims the KPB decision violated his right to equal protection.  To state an equal protection claim, plaintiff must allege sufficient facts to show that he is similarly situated to other prisoners who were treated differently.  <u>Crider v. Board of County Com'rs of Boulder</u>, 246 F.3d 1285, 1288 (10th Cir.), <u>cert. denied</u>, 534 U.S. 890 (2001).  In his Amended Complaint, Mr. Heath refers to three non-white inmates whom he alleges were "convicted

of KSA 21-3401(a) or (b)" and other offenses, had prison disciplinary violations unlike him, and yet were granted parole at their 15-year parole eligibility hearings. He adds the conclusory assertions that the KPB decisions are disparate and show racial and religious favoritism as well as selective enforcement. These allegations are simply not sufficient to permit a proper legal analysis. See Brown v. Zavaras, 63 F.3d 967, 971 (10th Cir. 1995)(stating that complaint's allegations were "too conclusory" to allow for complete equal protection analysis). "The acts of one person in committing an offense may be quite different and much less or much more shocking and heinous than the acts of another person in committing the same statutorily defined offense." Gilmore, 243 Kan. at 177. Plaintiff does not describe the offense behavior, criminal history, mental health needs or risks, educational achievements, and a multitude of other relevant factors that could have been considered in each of the three other inmates' cases. In addition, he alleges no facts indicating that this case implicates either a "suspect class" or a fundamental right. See Copeland v. Matthews, 768 F.Supp. 779, 780 (D.Kan. 1991)(The analysis of an equal protection claim begins with a determination of whether the challenged classification is one that disadvantages a "suspect class," or impinges upon the exercise of a "fundamental right.")(citing Plyler v. Doe, 457 U.S. 202, 216-17 (1982)). White inmates are not a suspect class for equal protection purposes.

Another of plaintiff's main, specific claims is that defendants denied his application for state parole based upon a second conviction that was vacated on direct appeal by the Kansas Supreme Court (KSC). In his Memorandum in Support, Mr. Heath asserts that

this amounted to violation of collateral estoppel and res judicata principles, improper reliance upon an unconstitutional conviction, malicious prosecution or re-prosecution of a dismissed charge without trial, and double jeopardy, and was not authorized in any of the laws of Kansas.  However, nothing in the exhibited NOA or plaintiff's allegations demonstrates that the dismissed count was relied upon by the KPB.  Mr. Heath's conviction of felony murder was apparently for the same acts as the child abuse offense.  His conviction of the offense of child abuse was reversed upon the KSC's finding that it merged with the offense of felony murder, and that convictions for both would violate double jeopardy principles.  State v. Heath, 264 Kan. 557, 572, 957 P.2d 449 (Kan. 1998).  The basis for this ruling was that "only one act forms the basis for both the abuse of a child charge and the homicide."  Id. at 571.  Thus, any offense behavior connected to the dismissed conviction was presumably the same as that connected to the murder conviction.  In sum, the KPB is not shown to have improperly considered any information connected only to a dismissed conviction.[14]  Plaintiff's allegation of reliance on facts argued at sentencing including aggravating factors "attached" to the dismissed offense, likewise fails logically to indicate any factors that could not have been considered in connection with his felony murder offense behavior.

Plaintiff complains about other information relied upon by the KPB.  At the time Mr. Heath's parole application was denied, the KPB

---

[14]     Plaintiff further alleges that the State routinely bases denial of parole upon "dismissed charges from plea agreements and reversed convictions," and that this amounts to the KPB finding the defendant guilty and imposing punishment for dismissed charges.  Plaintiff does not show that the KPB relied upon any charge dismissed pursuant to a plea agreement in his case; or, as discussed, his reversed conviction.

not only had sole authority to grant or deny parole, it was vested
with broad discretion in how it determined if an inmate will be
paroled.  Section 3717(h)(2) pertinently provides:

> At each parole hearing and, if parole is not granted, at
> such intervals thereafter as it determines appropriate,
> the Kansas parole board shall consider: (1) . . . and (2)
> all   pertinent   information   regarding   such   inmate,
> including, but not limited to, the circumstances of the
> offense  of  the  inmate;  the  presentence  report;  the
> previous social history and criminal record of the inmate;
> the  conduct,  employment,  and  attitude  of  the  inmate  in
> prison;   the   reports   of   such   physical   and   mental
> examinations as have been made, including, but not limited
> to, risk factors revealed by any risk assessment of the
> inmate; comments of the victim and the victim's family
> including in person comments, contemporaneous comments and
> prerecorded  comments  made  by  any  technological  means;
> comments   of   the   public;   official   comments;   any
> recommendation by the staff of the facility where the
> inmate is incarcerated; proportionality of the time the
> inmate has served to the sentence a person would receive
> under  the  Kansas  sentencing  guidelines  for  the  conduct
> that resulted in the inmate's incarceration; and capacity
> of state correctional institutions.

Id.  It is apparent from this statutory language that Kansas parole
board members were entitled to consider a wide range of information
in deciding whether to grant or deny parole.  See e.g., Berry v.
Scafe, 16 Fed.Appx. 948, 950-52 (10th Cir. 2001)(unpublished);
Schuemann v. Colorado State Bd. of Adult Parole, 624 F.2d 172, 174
(10th Cir. 1980)(parole boards are entitled to consider a broad
range of information in making decisions regarding the release of
prisoners); Fiumara v. O'Brien, 889 F.2d 254 (10th Cir. 1989)(same,
citing cases in context of federal parole), cert. denied, 495 U.S.
958 (1990).

The NOA in Mr. Heath's case indicates that the parole board
members denied parole based on the serious nature and circumstances
of his crime, its violent nature, and objections to his release
among other considerations.  The Board ordered an extended pass

based on findings that it was not reasonable to expect that parole would be granted at an earlier hearing for the reasons that the amount of time served was insufficient based on the severity of the crime and would devalue the victim; the inmate's crime resulted in multiple victims and caused lasting impact on those victims; the inmate had not demonstrated behavioral insights necessary to decrease his risk to re-offend; the inmate's conduct during the commission of the crime manifested in excessive brutality of the victim; and the victim was particularly vulnerable due to his age and relationship to the inmate.

The circumstances of the offense and comments of the victim's family and the public are listed as factors which the board is to consider at the parole hearing.  Id.  Kansas statutes do not preclude and in fact require consideration of information regarding the offense severity and circumstances.  Nor is the board's finding improper that the time served would detract from the seriousness of the offense.  Schuemann, 624 F.2d at 174 (holding that the Parole Board's determination that an inmate had not served sufficient time for a serious offense is "a sufficient and proper reason" to deny parole).  Plaintiff's claim that the finding of multiple victims was false ignores the child victim's family members and the serious impact upon them of the loss of this child and in this manner.  His claim that the KPB falsely found he had not "demonstrated behavioral insights" to reduce risk to reoffend incorrectly assumes without establishing that this finding is entirely inconsistent with his having productively spent his time in prison and other favorable factors.

The factors listed in the NOA provided to Mr. Heath are not

shown to be inconsistent with the wide range of information that is to be considered by the Kansas parole board under § 22-3717(h)(2). Furthermore, the Kansas courts have "approved the use of standardized language" in providing notice of the reasons for denial of parole.  Armstrong v. Kansas Parole Bd., 238 P.3d 331, *2 (Kan.App. Sept. 10, 2010, unpublished).  It is well recognized that a decision whether to release a prisoner on parole is complex, and involves a "discretionary assessment of a multiplicity of imponderables." Greenholtz, 442 U.S. at 10 (internal quotation marks and citation omitted).  Plaintiff does not allege facts showing the KPB violated any federal constitutional right by relying upon the information and findings in the NOA.

Plaintiff's other claims including breach of contract, mental distress, violation of his right to privacy, malicious intent, that KSA § 22-3717 is a "Bill of Pains and Penalties," and violation of the "dual soverignity (sic) protection" are for the most part conclusory[15] and certainly add no factual support to his claim that he was denied parole in violation of the U.S. Constitution.  Nor are they convincingly presented as broad constitutional challenges to any cited parole policy set forth in K.S.A. § 22-3717(g) and (h) or elsewhere.  The court need not accept any of these bald legal

---

[15]    Many of plaintiff's legal theories are not supported by sufficient factual allegations.  The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  No "heightened fact pleading" is required under this standard, "but only enough facts to state a claim to relief that is plausible on its face." Id. at 570.  In reviewing the sufficiency of the complaint, the court presumes all of the plaintiff's "well-pleaded facts" but not "conclusory allegations" to be true. McBride v. Deer, 240 F.3d 1287, 1289 (10th Cir. 2001)(internal quotation omitted).  A pro se plaintiff's complaint must be broadly construed. Haines v. Kerner, 404 U.S. 519, 520 (1972).  However, the court reviewing the sufficiency of a complaint is not to "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." Whitney v. State of N.M., 113 F.3d 1170, 1173-74 (10th Cir. 1997).

theories as true, as they are not allegations of fact.

Plaintiff's claims that "many inmates" are denied an LSIR and CSR before their parole hearing are not shown to involve him. He has no standing to seek relief on alleged violations or harm to inmates other than himself.

Finally, the court notes that a violation of state law alone does not give rise to a federal cause of action under § 1983. Malek, 26 F.3d at 1016. Several of plaintiff's assertions, such as interference with and breach of contract and violation of state statutes with regard to proportionality involve state laws. To the extent plaintiff is claiming that provisions of either K.S.A. § 22-3717 or K.S.A. 75-5210a or any other state statute were violated, he states no claim for relief under § 1983.

For all the foregoing reasons, the court concludes that this action is subject to being dismissed because Mr. Heath does not allege sufficient facts to show his entitlement to relief under either 42 U.S.C. § 1983 or 28 U.S.C. § 2241. He shall be given time to show cause why his claims should not be dismissed for failure to state sufficient facts to support a federal constitutional claim.

**IT IS THEREFORE BY THE COURT ORDERED** that plaintiff's requests in his complaint for preliminary injunction and for class certification (Doc. 1), and his motion for writ of habeas corpus ad testificandum (Doc. 4) are denied.

**IT IS FURTHER ORDERED** that plaintiff is granted thirty (30) days in which to file a proper and fully completed motion for leave to proceed in forma pauperis on court-provided forms.

**IT IS FURTHER ORDERED** that within the same thirty-day period, plaintiff is required to submit a Second Amended Complaint upon court provided forms that cures the deficiencies discussed herein, together with an initial partial filing fee of $14.50. Any objection to this fee order must be filed on or before the date payment is due. The failure to pay the fees as required herein may result in dismissal of this action without prejudice.

**IT IS FURTHER ORDERED** that within the same thirty-day period, plaintiff must specify a request for relief, other than damages, to which he is entitled under § 1983 that is not available in a habeas corpus petition and show cause why this action should not be construed as a § 2241 petition.

**IT IS FURTHER ORDERED** that in the alternative, within the same thirty-day period, plaintiff must submit a petition for writ of habeas corpus on § 2241 forms that cures the deficiencies discussed herein and that shows full exhaustion of administrative and state court remedies.

The clerk is directed to send Mr. Heath a copy of this Order along with forms for filing a § 1983 complaint, a § 2241 petition, and an in forma pauperis motion.

**IT IS SO ORDERED**.

Dated this 14th day of October, 2011, at Topeka, Kansas.


s/Sam A. Crow
U. S. Senior District Judge